### JAQUITH v. SCOTT.

Under Gen. Laws, *c.* 224, *s.* 2, a horse is exempt from attachment when reasonably required for actual use, either at the time of the attachment or within a reasonable time thereafter.

Upon the question whether it is so required, evidence of the debtor's intention is competent.

REPLEVIN for a horse.   Plea, the general issue, and a brief statement that the horse was attached as the property of the plaintiff.

The plaintiff claimed that the horse was exempt from attachment, under Gen. Laws, *c.* 224, *s.* 2, and this was the only question in dispute.   Facts found by the court.

The horse was attached November 28, 1882.   Previous to the attachment the plaintiff owned a grocery store, and used the horse

in that business and as his family driving horse. In June, 1882, the plaintiff was sued and his stock of goods attached, and sold at auction July 10, 1882. The plaintiff did not resume the grocery business after the attachment, but continued to keep the horse after that, and used him in various ways,—in buying apples, and, being in poor health, he went to the beach, taking the horse with him, and using him in carrying passengers, paying his expenses at the beach in that way.

November 13, 1882, the plaintiff let the horse out for his keeping, reserving the right to take and use him if he had occasion. Subsequently the plaintiff arranged with one Peaslee to keep the horse for an indefinite time, while the plaintiff went away on a visit. The horse was in Peaslee's hands under this arrangement when he was attached by the defendant, November 28, 1882. The defendant made Peaslee the keeper of the horse under the attachment. Shortly after the attachment the plaintiff went to Florida, returning the following February.

Subject to the defendant's exception, the plaintiff was allowed to testify, that prior to the attachment he had agreed to labor, using the horse a portion of the time, as a commercial traveller for a firm in Boston; that he was to commence whenever a certain man then in the employ of the firm left it; that the time was not definitely fixed, nor was the price for his labor agreed upon, but it was expected that he would commence some time in January; that he did not commence, on account of his health, until some time in April last; and he has been in their employ since, using the horse, since he was replevied, in the business of the firm.

The court found for the plaintiff, to which finding the defendant filed the foregoing exceptions.

*Frank G. Clarke*, for the defendant.

The fact that the horse had been let out for his keeping, and no business or use of the animal having been shown during all that time, would seem to be conclusive evidence that the debtor had no use for him.

The testimony of the plaintiff, which was objected to, should have been excluded. A mere unexecuted intention of future use is not sufficient. *Carkin* v. *Babbitt*, 58 N. H. 579. In *Burnside* v. *Twitchell*, 43 N. H. 390, it was decided that the fact that the owner of a saw-mill had purchased mill saws for the purpose of using them in his mill, and kept them there a year or more, if they had never been attached to the mill or used therein, would not make such saws fixtures, so as to pass with the mill. In *Wadleigh* v. *Janvrin*, 41 N. H. 512, the court say, "We are entirely satisfied that his secret unexecuted intention in that respect could have no legitimate bearing upon the question. It was entirely immaterial what purpose the defendant had formed, so long as he had not carried it

out." And in the same case, p. 513, "We think the testimony of the defendant as to his inchoate intention * * * * was properly rejected."

So in this case it is of no consequence what the plaintiff expected, intended, or wished to do *in futuro*, and upon the happening of certain contingencies, but what was his business, when the horse was attached, that required him for actual use. It is not claimed that a horse must be in actual use when attached, in order to be exempt, but that the debtor must have a business that requires the use of a horse, when necessary, in the reasonable and proper discharge of his business. A farmer may not have occasion to use his horse or oxen for weeks, but his answer is a good one if when either is attached he says, I am a farmer, and have a business in which my horse or oxen are required;—so with a teamster, a stage-driver, or any other person actually engaged in a business that requires an actual use of a horse or oxen at or near the time of the attachment. There is no such pretence in this case, and the statute does not say when liable to be required for future use, but when required for actual use.

*Hatch*, for the plaintiff.

CARPENTER, J. The principal question is, whether there was any evidence in the case upon which it was competent to find that the horse was required by the plaintiff for farming or teaming purposes, or other actual use (Gen. Laws, *c.* 224, *s.* 2); and this question turns upon the proper construction of the statute.

To hold that a horse is not exempt unless it is required for actual use at the very instant of the attachment, would practically nullify the statute: the horse would be liable to attachment at the end of every day's work. To hold that the horse is exempt for the reason merely that at some indefinite and uncertain future time it may be required for actual use, would practically make the exemption absolute, and render the qualifying language of the statute nugatory: the horse would be exempt, although required neither for present use, nor for any near and certain, or reasonably near and certain, future use. The true construction of the statute must therefore lie somewhere intermediate between these two extremes.

One of the obvious purposes of the statute is, to secure to the poor debtor the use of a horse whenever it is requisite in the business by which he gains a livelihood;—hence the duration of the exemption must be in general coextensive with that of the business. But if the debtor abandons that business, and either has none, or engages in some other in which he has no occasion for the use of a horse, the exemption ceases. It does not, however, terminate with a mere temporary cessation of such business. It could not be the intention of the legislature that the exemption should come to an end if the debtor is compelled to suspend his work for a time by reason of sickness or other like cause, nor during such reasonable

time as must necessarily intervene between the abandonment of one kind of business and the entering upon another, in both of which the use of a horse is necessary; nor that a horse procured in good faith, for the purposes of a business to be entered upon the next day or week, or within any reasonable time, should be liable to attachment until the moment the work of such business is actually begun. One's business may be of an intermittent character, as that of a travelling agent whose services are required only during alternate weeks or months; or it may be confined to a particular season of the year, as in the case of oyster and fish peddlers in those parts of the country which are distant from the sea. It would be a harsh and unnatural construction of the statute to hold, as matter of law, that the exemption ceases at the end of each week's, month's, or season's work, when there is a fixed intention to resume it the next week, month, or season. The business, in fact, subsists and continues, although work therein is for the time discontinued. In order to give full effect to the legislative intent, it must be held that a horse is required for actual use within the meaning of the statute, and therefore exempt from attachment, not only while in fact employed in actual and necessary service and during temporary cessations of that service, but also whenever it is reasonably necessary for actual use in a business which the debtor in good faith intends to enter upon within a reasonable time. The question in all cases is, whether the horse was reasonably required for actual use, either at the time of the attachment, or within a reasonable time thereafter; and this is a question of fact, to be determined upon all the evidence. *Cutting* v. *Tappan*, 59 N. H. 562. Here the evidence is abundant upon which it might be found, either that the plaintiff had not at the time of the attachment permanently abandoned the business in which the use of the horse was necessary, or that he was then in good faith intending to engage within a reasonable time in other business in the conduct of which a horse was necessary.

Whether a suspension of business is permanent or temporary, or whether one is about to enter upon any particular business, must necessarily, in many cases, be in a large degree a question of intention, as upon a question of domicil, or whether a removal from is a final abandonment of a homestead. *Locke* v. *Rowell*, 47 N. H. 46. The evidence excepted to was properly received.

*Exceptions overruled.*

Stanley, J., did not sit: the others concurred.